# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### Laredo Division

PRISCILLA VILLARREAL,
Plaintiff

vs.

THE CITY OF LAREDO, TEXAS, *et al.*

Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. 5:19-cv-48

**JURY TRIAL DEMANDED**

## PLAINTIFF'S RESPONSE TO DEFENDANTS CITY OF LAREDO, CLAUDIO TREVIÑO, JR., JUAN L. RUIZ, DEYANIRA VILLARREAL, ENEDINA MARTINEZ, ALFREDO GUERRERO, LAURA MONTEMAYOR, AND DOES 1-2'S MOTION TO <u>DISMISS PURSUANT TO RULE 12(b)(6)</u>

JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Telephone: (512) 717-5275
Fax: (512) 582-2948

**Attorneys for Plaintiff Priscilla Villarreal**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .............................................................................. iv

Introduction……………………………………………………………………………………..1

**I. Villarreal's allegations and claims against the City Defendants.**..........................2

A. Villarreal's work as a citizen journalist in and around Laredo. ......................... 2

B. Defendants engage in a pattern of intimidation and retaliation against Villarreal. ............ 2

C. Treviño, Ruiz, DV, and Does 1-2 decide to selectively investigate and wrongfully arrest Villarreal in retaliation for Villarreal's protected reporting. ............................... 3

D. Villarreal's § 1983 claims against the City Defendants........................................ 5

**II. Legal standards under Fed. R. Civ. P. 12(b)(6).** ............................................... 6

**III. Because the Individual Defendants are not entitled to qualified immunity, the Court should deny their motion to dismiss.** ............................................................... 7

A. The qualified immunity framework. ............................................................... 7

B. The Individual Defendants are not entitled to qualified immunity on Villarreal's First Amendment claims. ............................................................................... 8

    1.   Villarreal's allegations establish a claim for First Amendment retaliation. ........... 8

    2.   Villarreal's allegations establish a claim of First Amendment interference......... 10

    3.   Villarreal's First Amendment rights were clearly established............................. 11

    4.   The misconduct of Treviño, Ruiz, DV, and the Does was objectively unreasonable. ............................................................................... 12

        i.   A reasonable official would have understood any investigation and arrest of Villarreal under the circumstances to be unconstitutional....................................12

        ii.   No reasonable officer could have found probable cause ........................................15

    5.   Martinez, Guerrero, and Montemayor were objectively unreasonable.................. 17

C. Treviño, Ruiz, and DV are not entitled to qualified immunity on Villarreal's Fourth Amendment wrongful arrest claim. ................................................................ 17

D. Treviño, Ruiz, and DV are not entitled to qualified immunity on Villarreal's Equal Protection clause claim. .................................................................................. 18

E.  The Individual Defendants are not entitled to qualified immunity on Villarreal's § 1983 claim for conspiracy to deprive her constitutional rights.................................... 19

**IV. The Court should deny Defendants' motion to dismiss as to Villarreal's supervisory liability claim against Treviño (Count V)** .............................................................. 200

**V. The Court should deny Defendants' motion to dismiss as to the City of Laredo.** ........... 22

A.  Legal standards for § 1983 municipal liability. .................................................... 22

B.  Villarreal has sufficiently alleged a City of Laredo policy.................................. 23

C.  Villarreal's allegations show a nexus between the policy and final policymakers........... 24

D.  Villarreal has sufficiently alleged that the policy was a moving force behind the deprivation of her First, Fourth, and Fourteenth Amendment rights.............................. 244

**VI. Villarreal's allegations show she is entitled to pursue declaratory relief.**....................... 25

**VII. Conclusion and Prayer.** ................................................................................... 255

CERTIFICATE OF SERVICE ........................................................................27

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Adams v. City of New Orleans*, No. 15-1543, 2016 U.S. Dist. LEXIS 107534 (E.D. La. 2016)...20

*Anderson v. Creighton,* 483 U.S. 635 (1987) ...............................................................8

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...................................................................8

*Aubin v. Columbia Cas. Company,* 272 F. Supp. 3d 828 (M.D. La. 2017) ......................13, 14, 21

*Ballentine v. Las Vegas Metro. Police Dep't,* No. 2:14-cv-01584-APG-GWF, 2015 U.S. Dist. LEXIS 54720 (D. Nev. 2015) ...............................................................................14, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................6

*Brauner v. Coody*, 793 F.3d 493 (5th Cir. 2015) ...........................................................20

*Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000) ...............................................18

*Campbell v. City of New Kensington*, No. 05-0467, 2010 U.S. Dist. LEXIS 135268 (W.D. Pa. 2010) ...............................................................................................................14

*Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873 (9th Cir. 2002) ...........................................13

*Chrissy F. ex rel. Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844 (5th Cir. 1991)..............25

*City of Hearne v. Johnson*, No. 6:16-CV-00284-RP-JCM, 2016 U.S. Dist. LEXIS 192745 (W.D. Tex. 2016) ...............................................................................................11

*Colle v. Brazos County,* 981 F.2d 237 (5th Cir. 1993) ...............................................23

*Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) ...........................................................10

*Cooper v. Dillon,* 403 F.3d 1208 (11th Cir. 2005) .......................................................24

*Culbertson v. Lykos*, 790 F.3d 608 (5th Cir. 2015)........................................................22

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017)..............................................15, 21, 22

*District of Columbia v. Wesby,* 138 S. Ct. 577 (2018)....................................................8

*Espinoza v. City of N.Y.*, 2012 U.S. Dist. LEXIS 110728 (S.D.N.Y. 2012)................................19

*Florida Star v. B.J.F.,* 491 U.S. 524 (1989) ...............................................................9, 12, 14

*Franks v. Delaware*, 438 U.S. 154 (1978) ................................................................16

*Garza v. Guerra,* No. B-08-084, 2009 U.S. Dist. LEXIS 3304 (S.D. Tex. 2009) ....................17

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) ................................................22, 24

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...............................................................8

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) ...........................................................11

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) .........................................................7

*Hill v. City of Seven Points*, 31 F. App'x 835 (5th Cir. 2002) ........................................20

*Hope v. Pelzer*, 536 U.S. 730 (2002) ......................................................................8

*Hous. Chronicle Publ'g Co. v. Houston*, 531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975) ................................................................................................14, 16

*Johnson v. City of Shelby*, 135 S.Ct. 346 (2014) ...........................................................6

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ..................................................9, 11, 17

*Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010) ............................................15

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ........................................................7, 8

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) ..................................................19

*Lawrence v. Reed*, 406 F.3d 1224 (10th Cir. 2005) .....................................................13

*Leonard v. Robinson,* 477 F.3d 347 (6th Cir. 2007) .....................................................13

*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242 (5th Cir. 1997) ....................................6

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................16

*Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) .......................................................17

*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017) ..........................................................17, 18

*MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) .............................................25

*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283 (9th Cir. 1999) ...........................9

*Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) .......................................................9, 11

*Mills v. City of Bogalusa,* 112 F. Supp. 3d 512 (E.D. La. 2015) ...................................17

*Notzon v. City of Laredo*, No. 5:17-CV-7, 2018 U.S. Dist. LEXIS 117804 (S.D. Tex.  2018).....22

*N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964)............................................................9

*O'Donnell v. Knott*, 283 F. Supp. 3d 286 (E.D. Pa. 2017)............................................17

*Oklahoma Pub. Co. v. Oklahoma County Dist. Court,* 430 U.S. 308 (1977) ................14

*Pearson v. Callahan*, 555 U.S. 223 (2009)..................................................................7, 8

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986)...............................................22, 24

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002)........................................22, 24

*Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990)........................................19

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)..........................................................10

*Reichle v. Howards*, 566 U.S. 658 (2012) .....................................................................7

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005).........................................21

*Robinson v. Hunt Cty.,* 921 F.3d 440 (5th Cir. 2019)....................................................25

*Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819 (1995) ................11

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983)..........................................................20

*SCLC v. Supreme Court*, 252 F.3d 781 (5th Cir. 2001)..................................................6

*Smith v. Daily Mail Pub. Co.,* 443 U.S. 97 (1979) ...........................................9, 12, 14

*State v. Ford*, 179 S.W.3d 117 (Tex. App.—San Antonio 2005)....................................15

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex. 2011)............................23

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017)........................................................9, 11

*Willowbrook v. Olech*, 528 U.S. 562 (2000)..................................................................18

*Wyatt v. Fletcher*, 718 F.3d 496 (5th Cir. 2013).............................................................8

<u>Statutes</u>

TEXAS GOV. CODE, CHAPTER 552, Texas Public Information Act................................ 4, 15-16, 22

TEXAS PENAL CODE § 1.07(a)(7) ...................................................................................4

TEXAS PENAL CODE § 39.06(c) ........................................................................... *passim*

42 U.S.C § 1983 ................................................................................................... *passim*

<u>Constitutional Authorities</u>

First Amendment ..................................................................................................*passim*

Fourth Amendment ............................................................................................. *passim*

Fourteenth Amendment ........................................................................................20, 24

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6)........................................................................................ *passim*

<u>Other</u>

Texas Attorney General Open Records Decision No. 127 (1976)................................16

The Court should deny Defendants Claudio Treviño, Juan Ruiz, Enedina Martinez, Alfredo Guerrero, Laura Montemayor, Deyanria Villarreal ("DV")[1] and Does 1-2's (collectively "Individual Defendants") assertion of qualified immunity and Rule 12(b)(6) motion to dismiss. The First Amendment has long prohibited officials from retaliating against a citizen's protected speech. Plaintiff Priscilla Villarreal's allegations detail how the Individual Defendants engaged in a campaign of harassment and retaliation against Villarreal, because they dislike her candid journalism that has at times been unflattering to Defendants.

Seeking to silence Villarreal, Defendants investigated and arrested Villarreal for doing something journalists do every day—asking the police to confirm facts of a news story, receiving confirmation from the police, and publishing those facts accurately. Any reasonable official would have known that Villarreal's activity was constitutionally protected and no basis existed for her arrest. Yet as Villarreal alleges in detail, Treviño, Ruiz, DV, and Does 1-2 agreed to investigate and arrest Villarreal, rummaging for and applying an obscure law that no local authority had enforced in the 23 years it was in effect. Granting them qualified immunity would embolden law enforcement who wish to manipulate the criminal process to intimidate their critics and the press into silence. The Constitution forbids such an outcome. The Court should deny qualified immunity.

The Court should deny Defendants' motion to dismiss Villarreal's §1983 municipal liability claim against Defendant the City of Laredo (the "City"). Villarreal specifies how the retaliation she endured was the result of a hostile City policy intended to retaliate against Villarreal's protected First Amendment activity. Defendant Treviño's participation, as a final policymaker for the City, in the unconstitutional investigation and arrest of Villarreal confirms this retaliatory policy. Villarreal's allegations defeat the City's motion to dismiss.

---

[1] To avoid confusion, Defendant Deyanira Villarreal will be referred to throughout this opposition as "DV."

**I. Villarreal's allegations and claims against the City Defendants.[2]**

**A.  Villarreal's work as a citizen journalist in and around Laredo.**

Since 2015, Villarreal, best known as "Lagordiloca," has served as a citizen journalist in and around Laredo, Texas. (FAC ¶¶ 24, 31). On her Facebook page "Lagordiloca News Laredo Tx," Villarreal publishes live and recorded video of local crime and traffic scenes, along with information and colorful commentary about newsworthy local issues (*Id.* ¶¶ 32, 33-40). Citizens often discuss Villarreal's publications on the comments section of her Facebook posts. (*Id.* ¶ 38).

Local citizens consider Villarreal as a principal source of information about local matters such as crime and government, and have praised her efforts to provide authentic views of Laredo issues and events.  (FAC ¶¶ 37-39). She also has several critics because of her candid and gritty style of journalism. (*Id.* ¶ 40). Villarreal has received national coverage of her citizen journalism. (*Id.* ¶ 39). Over 120,000 Facebook users follow the "Lagordiloca" Facebook page. (*Id.* ¶ 37).

Villarreal's live-streams of crime and traffic scenes have sometimes shown Laredo Police Department ("LPD") officers in difficult and controversial situations. (FAC ¶¶ 42-45). While Villarreal has praised LPD at times, she has also published criticism of LPD. (*Id.* ¶ 46). She has published criticism of other city and county government officials as well. (*Id.* ¶¶ 47-50).

**B.  Defendants engage in a pattern of intimidation and retaliation against Villarreal.**

The Individual Defendants have subjected Villarreal to a pattern of intimidation, harassment and indifference intended to interfere with and retaliate against Villarreal's protected citizen journalism. (FAC ¶¶ 51-55). This pattern of acts has included:

- Officer Martinez willfully and falsely exclaiming to a group of fellow LPD officers that Villarreal is a five-time convicted felon, when Martinez knew that Villarreal has never been convicted of a felony;

---

[2] Villarreal refers to Defendants the City of Laredo and the Individual Defendants here as the "City Defendants."

- Officer Montemayor threatening to take Villarreal's phone as "evidence" while Villarreal was using her phone to record a live feed of a shooting scene in a public area. Montemayor did not threaten to take the equipment of any other media members also at the scene;

- Officer Guerrero harassing and intimidating Villarreal without justification while she was working a traffic incident for her employer, and continuing to arbitrarily harass her and force her away from her jobsite after Villarreal began recording his conduct with her cell phone camera, and after he verified with Villarreal's boss that she was on the job;

- LPD treating Villarreal with indifference when she called and spoke to Laredo police officers about a sexual assault she endured at a business in Laredo; and

- LPD deliberately withholding information from Villarreal generally released to local media.

(*Id.* ¶ 54). This pattern of harassment and intimidation was part of an agreement intended to chill Villarreal's expressive activities, including filming police activity in public and criticizing local officials. (*Id.* ¶¶ 55-57). Defendants also engaged in this pattern of acts pursuant to an official City policy intended to retaliate against and intimidate Villarreal. (*Id.* ¶¶ 58-63).

### C. Treviño, Ruiz, DV, and Does 1-2 decide to selectively investigate and wrongfully arrest Villarreal in retaliation for Villarreal's protected reporting.

In 2017, Treviño, Ruiz, DV, and the Doe Defendants ("Does"), along with Defendants Alaniz and Jacaman, agreed to target Villarreal for criminal investigation, arrest, and detention, based on two Facebook posts Villarreal published in the spring of 2017 ("Targeted Publications"). (FAC ¶¶ 64-66, 69-70, 101-02). Their goal in investigating and causing the arrest of Villarreal was to intimidate her into self-censorship and retaliate against her for exposing and criticizing LPD and the Webb County Office of the District Attorney ("WCDA"). (*Id.* ¶¶ 69, 102). What Villarreal published in the Targeted Publications included the identity and occupation of a man who committed suicide, and information about a family involved in a traffic accident. (*Id.* ¶¶ 65-66). Villarreal initially received this information from members of the public. (*Id.*) She later received information from an LPD officer confirming the information. (*Id.*) Villarreal had published similar information in the past, including information LPD provided. (*Id.* ¶ 67).

Treviño, Ruiz, DV, and the Does knew Villarreal engaged in protected First Amendment activity as to the Targeted Publications. (FAC ¶¶ 105-06). They knew the request or receipt of newsworthy information from an LPD official, and truthful publication of the same, was protected First Amendment activity. (*Id.* ¶¶ 85, 106-07, 116). They knew other local media regularly asked for and received information from LPD officials without being arrested. (*Id.* ¶¶ 106, 178).

Thus, Treviño, Ruiz, DV, and the Does knew there was no valid basis to arrest Villarreal. (FAC ¶¶ 105-06). Yet they decided to investigate and cause the arrest of Villarreal based on the Targeted Publications, and searched for a pretextual statute with which they could target her. (*Id.* ¶¶ 69-70, 84, 109). Ultimately, Treviño, Ruiz, DV, and the Does settled on TEXAS PENAL CODE § 39.06(c), "Misuse of Official Information." (*Id.* ¶ 70).

§ 39.06(c) requires that a defendant "solicits or receives from a public servant information that. . . has not been made public," meaning information (a) to which the public does not generally have access and (b) that is excepted from disclosure under the Texas Public Information Act ("TPIA"). (*Id.* ¶¶ 72-73). The statute also requires that the defendant solicits or receives the information "with intent to obtain a benefit…" (*Id.*) TEXAS PENAL CODE § 1.07(a)(7) defines "benefit" as "anything reasonably regarded as economic gain or advantage." (*Id.* ¶ 74).

But Treviño, Ruiz, DV, and the Does knew that the information Villarreal published was publicly-accessible and not subject to a TPIA exception. (*Id.* ¶¶ 103, 105, 110). And they knew Villarreal did not use her Facebook page as a source of economic gain. (*Id.* ¶¶ 93, 103). Thus, they knew there was no basis to target Villarreal under § 39.06(c). (*Id.* ¶¶ 84-85, 89-94, 103, 109).

Still, Treviño, Ruiz, DV, and the Does willfully pushed forward the wrongful investigation and other conduct leading to Villarreal's arrest and detention.  Ruiz, DV, and the Does were substantially involved in the criminal investigation of Villarreal. (FAC ¶¶ 86-88). Treviño, Ruiz,

DV, and the Does, pursuant to their agreement to retaliate against Villarreal, participated in the manufacture of criminal complaints and search and arrest warrant affidavits. (*Id.* ¶¶ 85, 88-91, 94, 104, 109-110). Ruiz made a number of material misstatements and omissions in the complaints and warrant affidavits, with the purpose of causing Villarreal's arrest and detention. (*Id.* ¶¶ 88-94).

Because of the Defendants' wrongful investigation and conduct, arrest warrants were issued for Villarreal. (FAC ¶ 95). She turned herself in, and was subjected to mocking from several LPD officers, including Defendants Martinez, Guerrero, and Montemayor. (*Id.* ¶¶ 96-97). The mocking reflected Defendants' animus toward Villarreal and their intent to silence her. (*Id.* ¶¶ 97-98, 100). Treviño at all times oversaw and endorsed Ruiz's, DV's, and the Does' misconduct. (*Id.* ¶¶ 109-11). Treviño, Ruiz, DV, and the Does were motivated by their hostility toward Villarreal's criticism of LPD, her broadcast of LPD activity, and her publication of information about local crime and traffic before LPD chose to release it. (*Id.* ¶¶ 68, 81, 110, 140, 179). The wrongful investigation and arrest were reflective of an official City policy intended to retaliate against and silence Villarreal. (*E.g.,* FAC ¶¶ 215-21, 225-26).

Villarreal was detained at the Webb County jail. (FAC ¶ 118). After her release on bond, Villarreal filed a writ of habeas corpus, which the trial court granted upon finding that § 39.06(c) was unconstitutionally vague. (*Id.* ¶¶ 124-27).

### D.  Villarreal's § 1983 claims against the City Defendants.

Villarreal asserts the following claims against the City Defendants:

- Count I: A First Amendment claim against the Individual Defendants for retaliation against and interference with Villarreal's protected First Amendment activity (FAC ¶¶ 130-61).

- Claim II: A Fourth Amendment claim against Treviño, Ruiz, DV, and the Does for causing the arrest and detention of Villarreal without probable cause. (*Id.* ¶¶ 162-72).

- Count III: An equal protection claim against Treviño, Ruiz, DV, and the Does for

selectively enforcing Texas Penal Code § 39.06(c) against Villarreal. (*Id.* ¶¶ 173-86).

- Count IV: A civil conspiracy claim against the Individual Defendants (*Id.* ¶¶ 187-99).

- Count V: A claim against Treviño for failure to supervise and train his officers, leading to the deprivation of Villarreal's rights. (*Id.* ¶¶ 200-13).

- Count VI: A municipal liability claim against the City of Laredo, based on a ratified City policy intended to retaliate against and interfere with Villarreal's exercise of her First Amendment rights. (*Id.* ¶¶ 214-33).

- Count VIII: A claim for declaratory relief against all City Defendants. (*Id.* ¶¶ 251-57).

Villarreal's claims are well-pled and defeat the City Defendants' Rule 12(b)(6) motion to dismiss. The Court should deny the City Defendants' motion.

## II. Legal standards under Fed. R. Civ. P. 12(b)(6).

 "In the context of a 12(b)(6) motion in a section 1983 suit, the focus should be whether the complaint properly sets forth a claim of a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States caused by persons acting under color of state law." *SCLC v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001) (internal quotation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, citation and brackets omitted). The Supreme Court has rejected heightened pleading standards for § 1983 claims. *Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014) (per curiam).

A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)(citation omitted). In evaluating a Rule 12(b)(6) motion, a court must examine the allegations in the light most favorable to the plaintiff, and with every doubt and all inferences resolved in the plaintiff's favor. *Id.*

**III. Because the Individual Defendants are not entitled to qualified immunity, the Court should deny their motion to dismiss.**

Villarreal's allegations, when taken as true, show the Individual Defendants acted to cause the deprivation of Villarreal's clearly established constitutional rights. Qualified immunity is not available for law enforcement officers who agree to investigate and arrest a person in retaliation for what those officers knew was everyday local news reporting. Particularly here, where Defendants manufactured Villarreal's arrest without probable cause and under a statute that no local authority had ever enforced. No reasonable police officer would have retaliated against Villarreal like the Individual Defendants did. The Court should reject the Individual Defendants' assertion of qualified immunity and deny their motion to dismiss.

**A. The qualified immunity framework.**

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity, then, shields government officials from civil damages liability unless the official violated a clearly established statutory or constitutional right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation omitted). Assessing qualified immunity involves two steps. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (citation omitted). "Second. . .the court must decide whether the right at issue was clearly established at time of [the] defendant's alleged misconduct." *Id.*

Whether a right was clearly established "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident."[3] *Kinney v. Weaver*,

---

[3] Some past Fifth Circuit decisions have treated "objective reasonableness" as a third step in the qualified immunity

367 F.3d 337, 350 (5th Cir. 2004) (citation omitted); *see also Pearson,* 555 U.S. at 244. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). This does "not require a case directly on point," so long as precedent "place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As the Fifth Circuit observed in

> '[t]he central concept' behind the 'clearly established' assessment is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'

*Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

A reasonable public official is charged with knowing the law governing his conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Objective reasonableness "also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kinney,* 367 F.3d at 349-50 (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

**B. The Individual Defendants are not entitled to qualified immunity on Villarreal's First Amendment claims.**

**1. Villarreal's allegations establish a claim for First Amendment retaliation.**

A First Amendment retaliation claim requires a plaintiff to show (1) she was engaged in constitutionally protected activity; (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of

---

analysis. *E.g., Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (citation omitted). Plaintiff is unaware of any Supreme Court precedent consistent with this approach, and recent Supreme Court decisions continue to focus on a two-step inquiry. *E.g., District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018).

constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

**First**, Villarreal's allegations establish she was engaged in protected First Amendment activity. This protected activity included filming police activity occurring in public.[4] *Turner v. Driver*, 848 F.3d 678, 687-90 (5th Cir. 2017). It included publishing content unfavorable to LPD, WCDA, and other local officials and conduct.[5] *E.g., N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 269-271, (1964) (explaining the First Amendment protects the "prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.") (citation omitted); *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). And it included publication of truthful information on matters of public concern that she rightfully obtained.[6] *E.g., Florida Star v. B.J.F.,* 491 U.S. 524 (1989); *Smith v. Daily Mail Publ. Co.,* 443 U.S. 97 (1979).

**Second**, Villarreal's allegations establish that the Individual Defendants' conduct caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. This element does not require Villarreal to show she entirely ceased her protected First Amendment activity. *Keenan*, 290 F.3d at 259-60.[7]

Defendants incorrectly argue that Villarreal did not plead a chilling injury. (Dkt 27, ¶14). Villarreal's allegations establish that the Individual Defendants' retaliatory conduct hindered and curtailed her ability to exercise her protected rights. (FAC ¶¶ 145-47). For example, Villarreal explains that Defendants' conduct has caused and continue to cause her to operate in constant fear of LPD further retaliating against and interfering with her citizen journalism. (*Id.* ¶ 147). She also

---

[4] (FAC ¶¶ 25-28, 30, 32, 42-45, 54, 68).

[5] (FAC ¶¶ 33, 46-50, 68).

[6] (FAC ¶¶ 29-30, 32, 34, 37, 43, 65-68).

[7] *See also Mendocino Envl.Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("It would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.")

details that the retaliatory acts caused her loss of sleep, physical ailments, restriction of her person, and reputational harm. (*Id.* ¶ 146). Because the Individual Defendants' conduct would chill the speech of a person of ordinary firmness, Villarreal's allegations satisfy this element.

**Third**, Villarreal's allegations establish that the Individual Defendants' adverse actions were substantially motivated against Villarreal's exercise of her First Amendment rights. For example, Villarreal details that Martinez, out of hostility toward Villarreal's First Amendment activity, knowingly slandered Villarreal to several other LPD officers. (*E.g.* FAC ¶¶51-52, 54). Villarreal further alleges that Guerrero, out of the same hostility, harassed and intimated Villarreal while she was working, and continued to do so after Villarreal begin filming him with her cell phone camera. (*Id.*) Villarreal also details how Montemayor threatened Villarreal while she was recording police activity in public, despite not threatening any other journalist at the location. (*Id.*)

Villarreal also specifies that because of their hostility toward her protected expression, Treviño, Ruiz, DV, and the Does willfully participated in the unlawful investigation and arrest of Villarreal. (FAC ¶¶ 51-53, 68, 110, 140). Villarreal further alleges that Treviño, Ruiz, DV, and the Does participated in assembling LPD officers—including Martinez, Guerrero, and Montemayor— to mock and humiliate Villarreal during her arrest. (*Id.* ¶¶ 97, 100).

### 2. Villarreal's allegations establish a claim of First Amendment interference.

A government official's direct restriction of First Amendment rights is a violation distinct from First Amendment retaliation. *See Colson v. Grohman*, 174 F.3d 498, 508-09 (5th Cir. 1999) (contrasting the two distinct First Amendment violations). When state action directly restricts speech, the state's motivation is immaterial. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015) (observing "the First Amendment expressly targets the operation of the laws—i.e., the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them.") Villarreal's allegations, when taken as true, show that the Individual Defendants interfered with

10

Villarreal's ability to engage in First Amendment activity. This included causing Villarreal's arrest and detention at the Webb County jail, where she could not publish newsworthy information on her Facebook page. *See, e.g., City of Hearne v. Johnson*, No. 6:16-CV-00284-RP-JCM, 2016 U.S. Dist. LEXIS 192745, at *12 (W.D. Tex. 2016) (finding state action that "delayed discussion of a political topic" to be a direct restriction on speech). Villarreal also details how Guerrero and Montemayor interfered with her right to film police activity in public. (FAC ¶ 54). Because Villarreal has made out claims for two First Amendment violations, she meets the first step of her burden to overcome the Individual Defendants' assertion of qualified immunity.

### 3.  Villarreal's First Amendment rights were clearly established.

It is long-established "that government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261 (citation omitted).[8] Moreover, each of the underlying First Amendment rights Villarreal exercised was clearly established at the time of the Individual Defendants' misconduct. The Fifth Circuit clearly established in February 2017 that citizens like Villarreal have a First Amendment right to film police activity in public. *Turner*, 848 F.3d at 687-90. And it has been long-established that state actors cannot punish speakers on the basis of viewpoint—the "First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" and other officials. *Mesa*, 543 F.3d at 273 (citation and internal quotations omitted). A reasonable police officer would have understood that he could not retaliate against Villarreal for filming law enforcement activity in public, or because he disagreed with the content or viewpoints that she published.[9]

---

[8] *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right.") (internal quotation omitted).

[9] As the Supreme Court has consistently made clear, viewpoint-based discrimination of expressive activity is "egregious form of content discrimination," and is "presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 828-29 (1995).

It also was clearly established that officials cannot punish a citizen for publishing accurate information about a matter of public concern that was rightfully obtained, as Villarreal did with the Targeted Publications. *E.g., Florida Star,* 491 U.S. 524 (holding that the First Amendment precluded a state from imposing damages for publication of rape victim's name obtained from government); *Daily Mail Publ. Co.,* 443 U.S. 97  (holding that a state cannot constitutionally punish the publication of a juvenile offender's name lawfully obtained from court records). This includes accurately publishing information received from government officials. *Id.* A reasonable officer would have understood that he could not retaliate against Villarreal for publishing truthful information about a matter of public concern, even if the information came from an LPD officer.

Because Villarreal's First Amendment rights were clearly established, she meets her burden to overcome Defendants' assertion of qualified immunity.

### 4.  The misconduct of Treviño, Ruiz, DV, and the Does was objectively unreasonable.

#### i.     A reasonable official would have understood any investigation and arrest of Villarreal under the circumstances to be unconstitutional.

Defendants pin their assertion of qualified immunity on the faulty premise that there "was no bad faith committed by Defendants who had no reason to believe the section of the Penal Code would *later* be found unconstitutional." (Dkt. 27 ¶¶ 14-15). But Defendants miscomprehend a key aspect of their wrongful conduct—they never should have targeted Villarreal for criminal investigation and arrest. Villarreal details how Treviño, Ruiz, DV, and the Does knew Villarreal's conduct related to the Targeted Posts was protected First Amendment activity, being the same newsgathering and publishing done by local media every day in Laredo. (FAC ¶¶ 105-06, 178). A reasonable officer, knowing it would be unconstitutional to investigate and arrest Villarreal, would have declined to push the criminal process forward. (*E.g., id.* ¶¶ 79-81, 142).

But Villarreal specifies how Treviño, Ruiz, DV, and the Does agreed to investigate and

arrest Villarreal for the Targeted Publications and find a statute into which they could attempt to shoehorn Villarreal's protected activity to give the false impression of probable cause. (FAC ¶¶ 69-70, 84). Their unlawful retaliation, then, **started with the animus-driven decision to criminally target Villarrea**l, regardless of the criminal statute Defendants ultimately asserted. That Defendants selected § 39.06(c), knowing no local authority had enforced it in 23 years, simply confirms the deliberate indifference of their unconstitutional conduct. (*Id.* ¶¶ 84, 141).

Moreover, Treviño, Ruiz, DV, and the Does' application of §39.06 to Villarreal under the facts available to them was unconstitutional. A reasonable law enforcement official would not have applied any criminal statute, let alone § 39.06(c), to Villarreal and the Targeted Publications. (*E.g,* FAC ¶¶ 78-82). Moreover, "where a statute authorizes conduct that is patently violative of fundamental constitutional principles reliance on the statute does not immunize the officer's conduct." *Lawrence v. Reed*, 406 F.3d 1224, 1231-32 (10th Cir. 2005) (holding it was unreasonable for an officer to rely on a law allowing destruction of derelict automobiles without a hearing because the official could not reasonably have concluded that his actions were consistent with due process) (internal citation omitted); *see also Leonard v. Robinson,* 477 F.3d 347, 359 (6th Cir. 2007) (finding that "viewing the facts in the light most favorable to the plaintiff, no reasonable police officer would believe that any of the three other [] statutes relied upon by the district court are constitutional as applied to [plaintiff's] political speech during a democratic assembly.")[10]

The Supreme Court consistently has found a First Amendment right to publish accurate

---

[10]*See also Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 882 (9th Cir. 2002) (holding that it was unreasonable for an officer to rely on statutes requiring individuals at *Terry* stops to identify themselves because of the clearly established Fourth Amendment right not to identify oneself); *Aubin v. Columbia Cas. Company*, 272 F. Supp. 3d 828, 839 (M.D. La. 2017) ("Based on the Supreme Court's repeated and long-standing precedent validating the right of citizens to verbally criticize police officers, no reasonable officer could rely on Louisiana's public intimidation statute to arrest a person who threatens to have them fired.") (citing *Lawrence* and *Carey*).

information lawfully obtained.[11] Most ordinary citizens—let alone any reasonable officer—would have understood the outrageous manner in which Treviño, Ruiz, DV, and the Does selected and applied §39.06(c) as violating core First Amendment liberties. Defendants' conduct, if condoned, would threaten felony arrest for any journalist or other citizen who asked for or received information from a public official and accurately published the same. The Constitution prohibits such a result.

Defendants' indefensible application of §39.06(c) also violated Texas's long-established "constitutional right of access to information concerning crime in the community, and to information relating to activities of law enforcement agencies." *Hous. Chronicle Publ'g Co. v. Houston*, 531 S.W.2d 177, 186 (Tex. Civ. App.—Houston [14th Dist.] 1975). And no reasonable officer would have believed gaining popularity on Facebook to justify arresting Villarreal for receiving newsworthy information from an LPD officer. (*E.g.,* FAC ¶ 76). This would create potential criminal liability for every single publisher in the United States who wants others to read their content. That is a repugnant outcome by any standard, let alone clear First Amendment standards. Finally, any reasonable officer by his diligence would have known that §39.06(c) had never been enforced by local authorities and found this as another reason not to enforce it against Villarreal. (FAC ¶ 143).

The conduct of Treviño, Ruiz, DV, and the Does as alleged was objectively unreasonable.[12]

---

[11] *Florida Star,* 491 U.S. 524; *Daily Mail Publ. Co.,* 443 U.S. 97; *see also Oklahoma Publ. Co. v. Oklahoma County Dist. Court,* 430 U.S. 308 (1977) (finding that state could not constitutionally enjoin the publication of juvenile offender's name obtained in court proceeding).

[12] *See Ballentine v. Las Vegas Metro. Police Dep't,* No. 2:14-cv-01584-APG-GWF, 2015 U.S. Dist. LEXIS 54720, at *10-12 (D. Nev. 2015) (rejecting qualified immunity where plaintiff alleged that defendants selectively enforced a statute restricting speech on the basis of the viewpoint expressed); *Campbell v. City of New Kensington*, No. 05-0467, 2010 U.S. Dist. LEXIS 135268, at *37 (W.D. Pa. 2010) (denying qualified immunity on First Amendment retaliation claim where "it would have been clear to a reasonable municipal code enforcement officer [ ] that retaliating against a local landlord for speaking out in favor of renting to black tenants by selectively enforcing the property maintenance code against him was unlawful"); *Aubin,* 272 F. Supp. 3d at 839.

As Villarreal alleges, they had every reason to know they could not criminally punish Villarreal's First Amendment activity, yet they decided to do so anyhow. (FAC ¶¶ 84-85, 105-08, 110, 116, 135). The Texas court's finding that §39.06(c) was unconstitutional merely affirmed the egregiousness of Defendants' decision to investigate and arrest Villarreal under an irredeemable statute. The Court should deny qualified immunity to Treviño, Ruiz, DV, and the Does.

### ii.  No reasonable officer could have found probable cause.

The lack of probable cause under § 39.06(c) also establishes objective unreasonableness. Law enforcement officials are not entitled to qualified immunity for First Amendment retaliatory arrests if "there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (citation omitted). "Probable cause means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 391 (quotation omitted). Importantly, law enforcement officials "generally have a duty to know the basic elements of the laws they enforce." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 258 (3d Cir. 2010).

Villarreal's allegations, when accepted as true, show there were no "facts or circumstances" to suggest that (1) the information she published in the Targeted Publications was not publicly accessible or subject to a TPIA exception or (2) Villarreal published the information with the intent to receive an economic benefit—both of which are essential elements of § 39.06(c). (*E.g.,* FAC ¶¶ 35, 65-67, 72-78); *see also State v. Ford*, 179 S.W.3d 117, 122-23 (Tex. App.—San Antonio 2005, no pet.) (clearly establishing for Laredo officials that "prohibited from disclosure" as used in §39.06(c) means the set of TPIA exceptions). Villarreal specifies that Treviño, Ruiz, DV, and the Does, all police officers aware of the circumstances and the elements of the statute,

15

knew there was no probable cause. (*Id.* ¶¶ 85, 88, 89-94, 103, 109-10, 132). Yet Defendants do not point to any TPIA exception upon which a reasonable officer could have relied in targeting Villarreal.[13] While they refer to §552.108, they fail to note that "basic information" about a police investigation is not excepted from TPIA disclosure, and includes the name and occupation of a suspect, the location of an suspected crime, and other details similar to those Villarreal published.[14] (Dkt. 27 ¶ 17).  And law enforcement officials cannot deem information non-public simply because they feel like it. Here, Villarreal first received the information in the Targeted Publications from members of the public, something the Individual Defendants willfully ignored. (FAC ¶¶ 65-66).

Villarreal also specifies that at all relevant times, the Individual Defendants knew she did not use her Facebook page for economic gain. (FAC ¶ 93). Ruiz's statements in his arrest warrant affidavits simply state Villarreal releasing the information before others would gain her popularity on Facebook. (*Id.* ¶ 92). This exemplifies how far the Individual Defendants strained to cause Villarreal's arrest. No reasonable officer could have found probable cause.

It is also clearly established as unconstitutional that an official cannot submit material falsehoods or omissions in an arrest warrant affidavit, which taint any resulting arrest warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Villarreal details how Ruiz made material misrepresentations and omissions in his arrest warrant affidavits—including not including any details about a TPIA exception or that §39.06(c) required intent to gain economic benefit (FAC ¶¶ 88-94). She also alleges that Treviño, DV, and the Does knew of and endorsed the same. (*Id.* ¶¶ 88-94, 104, 110, 132). No reasonable officer would have

---

[13] The TPIA requires that elected and appointed officials undergo TPIA training. TEX. GOV. CODE § 552.012.

[14] Texas Attorney General Open Records Decision No. 127 (1976) (citing *Hous. Chronicle Publ'g.*)

manufactured deficient affidavits to cause arrest warrants to issue.[15] Treviño, Ruiz, DV, and the Does are not entitled to qualified immunity on Villarreal's' First Amendment claims.

### 5. Martinez, Guerrero, and Montemayor were objectively unreasonable.

As noted, it was clearly established that officers cannot retaliate against a citizen for exercising First Amendment rights. *Keenan*, 290 F.3d at 261. Yet that is what Martinez, Guerrero, and Montemayor did when threatening, harassing, and defaming Villarreal because of their animus toward Villarreal's citizen journalism and their desire to chill the same. (FAC ¶¶ 51-52, 54, 132-33, 136-37). Any reasonable law enforcement official would have understood that these acts were unlawful. (*Id.* ¶137). Martinez, Guerrero, and Montemayor are not entitled to qualified immunity.[16]

### C. Treviño, Ruiz, and DV are not entitled to qualified immunity on Villarreal's Fourth Amendment wrongful arrest claim.

The right to be free from arrest without probable cause was clearly established. *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994). Officials who engage in conduct leading to a wrongful arrest are appropriate defendants to a wrongful arrest claim, even if they did not make the physical arrest.[17] *See Garza v. Guerra,* No. B-08-084, 2009 U.S. Dist. LEXIS 3304, at *18-19 (S.D. Tex. 2009). Villarreal's well-pled allegations show (i) there was no actual probable cause to arrest Villarreal, (ii) no reasonable officer could have found otherwise and (iii) no reasonable officer would have manufactured affidavits to give a false impression of probable cause. Treviño,

---

[15] *E.g., Mills v. City of Bogalusa,* 112 F. Supp. 3d 512, 518 (E.D. La. 2015) (finding no qualified immunity on First Amendment retaliation claims where allegations were that defendant police officers allegedly provided false statements that led to the speaker's arrest).

[16] *See, e.g, O'Donnell v. Knott,* 283 F. Supp. 3d 286, 304 (E.D. Pa. 2017) (denying qualified immunity to detectives where plaintiff alleged that in response to plaintiff's protected parody speech, the detectives threatened her with arrest if she continued the parody speech, confronted her at her job, and insinuated to her boss that plaintiff had previously been cited for harassing a business.)

[17] Also, it has been clearly established since August 2017 that voluntary surrender to an arrest warrant is a Fourth Amendment seizure for purposes of a § 1983 claim. *McLin v. Ard*, 866 F.3d 682, 694-95 (5th Cir. 2017).

Ruiz, DV, and the Does are barred from qualified immunity on Villarreal's wrongful arrest claim. *E.g. McLin,* 866 F.3d at 695 (finding allegations that "the [d]efendants met and conspired to create falsified affidavits for the purpose of obtaining arrest warrants" sufficient to show a Fourth Amendment violation).

### D. Treviño, Ruiz, and DV are not entitled to qualified immunity on Villarreal's Equal Protection clause claim.

For selective enforcement and similar "class of one" equal protection claims, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). It was clearly established at the time of Defendants' wrongful conduct that selective enforcement of a statute violates the equal protection clause. *Id; Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). It also was clearly established that a state actor could selectively enforce a statute if "motivated by improper considerations, such as race, religion, or **the desire to prevent the exercise of a constitutional right**." *Bryan*, 213 F.3d at 277 (emphasis added).

Villarreal's allegations, when taken as true, show that Treviño, Ruiz, DV, and the Does intentionally singled her out for enforcement of TEXAS PENAL CODE § 39.06(c). Villarreal specifies how these Defendants decided to target Villarreal under the statute despite knowing that no local authority had ever investigated, arrested, or prosecuted any person under the statute during its 23 years in effect. (FAC ¶¶ 84, 141, 177). Those persons included those similarly-situated to Villarreal, such as local journalists and citizens who routinely asked for and received information from LPD officials, and who accurately published that and other newsworthy information. (*Id.* ¶¶ 106, 177-78). Villarreal also details that the Defendants singled her out under the statute because they wanted to force her into stopping her style of citizen journalism that Defendants disliked. (*Id.* ¶¶ 69, 84-85, 238). Villarreal has sufficiently alleged an equal protection claim.

No reasonable officer would have enforced § 39.06(c) against Villarreal under the circumstances, knowing that the law had never before been enforced locally, let alone against any similarly-situated persons. (FAC ¶ 84). Villarreal's allegations, when taken as true, show Treviño, Ruiz, DV, and the Does were objectively unreasonable in selectively targeting Villarreal. They are not entitled to qualified immunity on Villarreal's equal protection claim.[18] The City Defendants' silence on Villarreal's selective enforcement claim confirms this. (*E.g.,* Dkt. 27 ¶¶ 15-17).

### E. The Individual Defendants are not entitled to qualified immunity on Villarreal's § 1983 claim for conspiracy to deprive her constitutional rights.

Defendants label Villarreal's conspiracy claim "elaborate." (Dkt. 27 ¶ 15). But Villarreal's conspiracy claim is simple: (i) she published unflattering stories about Defendants, (ii) she committed no crimes, and (iii) the Defendants agreed to dig up a law that they misapplied to argue local reporting was a crime, knowing, as any reasonable officer must, that such activity is constitutionally protected. (*E.g.,* FAC ¶¶ 188-89, 192-97).

"To allege a civil conspiracy under § 1983, a plaintiff must establish "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Villarreal meets the first prong. She specifies that that the Individual Defendants acted under color of state law. (FAC ¶¶ 12-19; 189). Villarreal details the existence of an agreement between Treviño, Ruiz, DV, the Does, and Defendants Alaniz and Jacaman aimed at selectively investigating Villarreal and causing her unlawful arrest and detention to retaliate against her citizen

---

[18] *E.g., Lacey v. Maricopa Cty.*, 693 F.3d 896, 924 (9th Cir. 2012) (refusing to grant qualified immunity to sheriff and deputies alleged to have participated in singling out a journalist for arrest); *Espinoza v. City of N.Y.*, 2012 U.S. Dist. LEXIS 110728, at *14 (S.D.N.Y. 2012) (finding no qualified immunity on selective enforcement claim where plaintiff alleged she was treated differently than similarly-situated vendors and that the "that the selective treatment was motivated by a desire to punish her for exercising her constitutional right to testify against the police."); *Ballentine* 2015 U.S. Dist. LEXIS 54720, at *6-10.

journalism. (*Id.* ¶ 69, 102, 193). Villarreal specifies that Treviño, Ruiz, DV, and the Does furthered the agreement by finding a pretextual statute under which they could manufacture arrest warrant affidavits. (*Id.* ¶¶ 69-70, 102, 194-95, 206). Villarreal also details another agreement between all of the Individual Defendants, intended to harass and intimidate Villarreal in retaliation for her exercise of First Amendment rights. (*Id.* ¶¶ 57, 191).

Villarreal's allegations also meet the second prong of a § 1983 conspiracy claim. As detailed above, Villarreal's allegations establish claims for deprivation of her First Amendment, Fourth Amendment, and Fourteenth Amendment rights. The FAC details how and why both the alleged agreements caused the Individual Defendants to deprive Villarreal of these rights. (*E.g.,* FAC ¶¶ 54, 85-102, 135-147, 163-165, 174-184, 191, 194-96). Villarreal's detailed allegations, when taken as true, show an action for conspiracy under § 1983.

Finally, qualified immunity does not bar a conspiracy claim where it does not bar the underlying deprivation of rights, because the unconstitutionality of a conspiracy to deprive constitutional rights is clearly established.[19] Because qualified immunity does not bar Villarreal's First, Fourth, and Fourteenth Amendment claims, it does not bar her § 1983 conspiracy claim.

Villarreal has met her burden at the motion to dismiss stage to show the Individual Defendants are not entitled to qualified immunity. The Court should deny their motion to dismiss.

## IV. The Court should deny Defendants' motion to dismiss as to Villarreal's supervisory liability claim against Treviño (Count V).

To establish supervisory liability under § 1983, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiffs rights; and (3) the failure

---

[19] *E.g, Adams v. City of New Orleans*, No. 15-1543, 2016 U.S. Dist. LEXIS 107534, at *21-22 (E.D. La. Aug. 12, 2016) (citing *Hill v. City of Seven Points*, 31 F. App'x 835 (5th Cir. 2002) and *Ryland v. Shapiro*, 708 F.2d 967, 974 (5th Cir. 1983)).

to train or supervise amounts to deliberate indifference." *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015)(citation omitted). A plaintiff must allege with specificity how a training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). A plaintiff can establish deliberate indifference "based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Davidson*, 848 F.3d at 397 (internal quotation omitted).

Villarreal specifies that Treviño was responsible for training and supervising individuals within LPD. (FAC ¶ 202). And she alleges that Treviño failed to train his officers regarding her clearly established First Amendment rights. (*Id.* ¶ 204). At the motion to dismiss stage, this meets the first element for supervisory liability.

Villarreal also sufficiently alleges a link between Treviño's failure to supervise and train, and the deprivation of her rights. Villarreal alleges a pattern of acts from LPD officers intended to retaliate against and interfere with her First Amendment activity, which was caused by Treviño's failure to train his officers on First Amendment rights. (FAC ¶¶ 54, 203-04). This same pattern also refutes Defendants' claim that Villarreal did not sufficiently allege Treviño's deliberate indifference. (*See* Dkt. 27 ¶ 23). Villarreal details that Treviño was aware of the retaliation but failed to provide remedial training, deciding instead to approve the retaliation. (FAC ¶¶ 203, 205).

Moreover, a single act of retaliation can show the requisite link for supervisory liability. *See Aubin,* 272 F. Supp. 3d at 834-35 (finding sufficient supervisory liability claim in First Amendment context where the plaintiff "was arrested for merely threatening to have [a deputy] fired.") Villarreal's allegations about Treviño's supervision of Ruiz, DV, and the Does in the retaliatory investigation and arrest of Villarreal establish a link between Treviño's failure to supervise and train and the First Amendment violations. (*E.g.,* FAC ¶¶ 86-94, 206-07, 210).

Because the unconstitutional investigation and arrest of Villarreal was the highly predictable consequence of Treviño's failure to supervise and train, it also suffices to show deliberate indifference. *See Davidson,* 848 F.3d at 397. And that Texas law requires appointed officials like Treviño to undergo TPIA training further illustrates Treviño's deliberate indifference to Villarreal's rights. *See* TEX. GOV. CODE § 552.012.

The Court should deny the motion to dismiss as to Villarreal's supervisory liability claim.

## V. The Court should deny Defendants' motion to dismiss as to the City of Laredo.

### A. Legal standards for § 1983 municipal liability.

The elements of a § 1983 municipal liability claim include "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *see also Groden v. City of Dallas*, 826 F.3d 280, 283-84 (5th Cir. 2016). A policy giving rise to § 1983 liability "may be officially promulgated by the governing body, by an official to which policy-making authority has been properly delegated, or by officials or employees of the municipality through a persistent, widespread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy." *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (internal quotations omitted). A policymaker's single decision to adopt a particular course of conduct can subject a municipality to liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986).

The Fifth Circuit has held to defeat a 12(b)(6) motion on a municipal liability claim, a plaintiff needs only to "allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden*, 826 F.3d at 283-84. "In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the

existence or absence of internal policies or training procedures prior to discovery. Accordingly, "only minimal factual allegations should be required at the motion to dismiss stage" for pleading municipal liability. *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011); *see also Colle v. Brazos County,* 981 F.2d 237, 245 (5th Cir. 1993) (reversing dismissal of municipal liability claim, where the complaint "cited with excruciating detail" a county's policies and underlying events leading to a constitutional injury.)

### B.  Villarreal has sufficiently alleged a City of Laredo policy.

The Court should reject Defendants' argument that Villarreal fails to allege a policy, pattern, or practice that caused her injuries. (Dkt. 27 ¶¶ 24-25, 29). Villarreal asserts several specific allegations that when taken as true, establish an official City policy:

- "[T]he City's unconstitutional policy was and remains a decision to intimidate, retaliate against, and punish Villarreal for (a) recording and publishing law enforcement activities occurring in public and (b) lawfully gathering and publishing accurate information and commentary about matters of local public interest, including that critical of or otherwise unfavorable to city government affairs and city officials." (FAC ¶ 216, *see also* ¶¶ 58, 120, 215);

- "The City's unconstitutional policy also was and remains a decision to restrict and interfere with Villarreal's citizen journalism, with the intent that (a) she stop gathering and publishing information and commentary critical of or otherwise unfavorable to the Laredo government, and (b) she stop encouraging and providing a forum for other citizens to do the same." (*Id.* ¶ 217; *see also* ¶¶ 58, 120, 215);

- "Acts reflective of the City's policy include those several acts detailed in Paragraph 54 herein, and the unlawful investigation and arrest of Villarreal detailed herein." (*Id.* ¶ 219; *see also* ¶¶ 58, 120, 215, 218);

- That the City policy was ratified with the intent to intimidate Villarreal into ceasing her protected First Amendment activity. (*Id.* ¶¶ 57, 59, 216).

These allegations defeat Defendants' motion to dismiss. *E.g., Notzon v. City of Laredo*, No. 5:17-CV-7, 2018 U.S. Dist. LEXIS 117804, at *17 (S.D. Tex. 2018) (finding municipal liability claim sufficient where "[p]laintiffs allege that the individual officers named in this suit falsely arrested

each of them pursuant to a longstanding Laredo Police Department custom or practice of covering up illegal police conduct, with deliberate indifference toward Plaintiffs' rights.")

**C. Villarreal's allegations show a nexus between the policy and final policymakers.**

The City Defendants' motion to dismiss focuses primarily on the issue of a policy or pattern, and does not meaningfully address this element of municipal liability. (*See* Dkt. 27 ¶¶ 24-29). But Villarreal will address it in furtherance of meeting her 12(b)(6) burden.

Her allegations, when taken as true, show that Treviño, the Laredo City Council, and the Laredo City Manager, as final policymakers for the City, made decisions to adopt and act upon the alleged policy that are fairly attributable to the City for § 1983 liability. (FAC ¶¶ 60, 220, 222, 225-226). The allegations detail why each of these policymakers can be charged with actual or constructive knowledge of the official City policy intended to retaliate against and silence Villarreal. (*Id.* ¶¶ 54, 61-62, 220, 222-23). These allegations are sufficient to establish the "nexus" element of municipal liability. *E.g. Pineda,* 291 F.3d 325; *Groden* 826 F.3d at 283-84 (reversing 12(b)(6) dismissal of a municipal liability claim on allegations that a city spokesman acted consistent with the alleged official policy). Indeed, Treviño's conduct in investigating and causing the arrest of Villarreal under § 39.06(c) alone is enough show a City policy of retaliation ratified by a final policymaker. *E.g., Cooper v. Dillon,* 403 F.3d 1208, 1223 (11th Cir. 2005) (holding police chief's enforcement of criminal statute against a journalist who published information about an internal investigation to be "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy.") (quoting *Pembaur*, 475 U.S. at 483).

**D. Villarreal has sufficiently alleged that the policy was a moving force behind the deprivation of her First, Fourth, and Fourteenth Amendment rights.**

Villarreal's well-pled allegations show that the City's policy was a moving force behind

the pattern of retaliation and interference Defendants waged against Villarreal's protected activity, including the unlawful investigation and arrest of Villarreal. (*E.g.,* FAC ¶¶ 58, 63, 200-21, 223). Villarreal has sufficiently established a §1983 claim against the City, and the Court should deny Defendants' motion to dismiss the claim.

## VI. Villarreal's allegations show she is entitled to pursue declaratory relief.

A declaratory judgment action requires an actual case or controversy. *E.g. MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) ("Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial'…."). "A party may pursue both injunctive and declaratory relief, and [a] court may grant declaratory relief even though it chooses not to issue an injunction or mandamus." *Robinson v. Hunt Cty.,* 921 F.3d 440, 450 (5th Cir. 2019) (internal quotation omitted). And government officials do not receive qualified immunity for claims seeking injunctive or declaratory relief. *Chrissy F. ex rel. Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

Villarreal has alleged facts showing there is a definite and real controversy between she and the City Defendants, including the threat of future retaliatory acts and an ongoing official city policy targeting her First Amendment activity. (FAC ¶¶ 54, 129, 147, 157, 160, 215-218, 224-225). This is sufficient to show a justiciable controversy between the parties suitable for declaratory relief and defeat Defendants' motion to dismiss.

## VII. Conclusion and Prayer.

Villarreal's allegations, when taken as true, establish claims against the City Defendants for the violation of clearly established constitutional rights, to which qualified immunity does not apply. The Court should deny the City Defendants' motion to dismiss.

Dated: July 2, 2019

Respectfully Submitted,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT MORRIS LAW, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Telephone: (512) 717-5275
Fax: (512) 582-2948

**Attorneys for Plaintiff Priscilla Villarreal**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2019, I electronically filed the foregoing with the Court using CM/ECF, and served on the same day all counsel of record via the CM/ECF notification system.

<u>/s/JT Morris</u>
JT Morris